SAMUEL A. BURNETTE,

                Plaintiff,

v.                                             Case No. 24-cv-887-pp

CASEY JENSEN, *et al.*,

                Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), SCREENING COMPLAINT UNDER 28 U.S.C. §1915A AND DISMISSING CASE

       Plaintiff Samuel A. Burnette, who is incarcerated at Jackson Correctional Institution and is representing himself, filed this lawsuit, alleging that the defendants violated his rights under federal and state law. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

       The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On July 17, 2024, the court ordered the plaintiff to pay an initial partial filing fee of $10.77. Dkt. No. 5. The court received that fee on September 17, 2024. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II. Screening the Complaint**

A. <u>Federal Screening Standard</u>

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See <u>Cesal v. Moats</u>, 851 F.3d 714, 720 (7th Cir. 2017) (citing <u>Booker-El v. Superintendent, Ind. State Prison</u>, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v.</u>

2

Case 2:24-cv-00887-PP    Filed 10/22/24    Page 2 of 15    Document 11

Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The complaint names as defendants Jackson Security Director Casey Jensen, Mailroom Supervisor Lieutenant Leroy Dunahay, Mailroom Sergeant Peterson, Mailroom Correctional Officer Zinn, Oxbow Unit Manager Martinson and Administrator of the Division of Adult Institutions Sara Cooper. Dkt. No. 1 at ¶¶23–28. He sues all defendants in their individual capacities. Id.

The plaintiff alleges that on April 22, 2024, he filed a civil lawsuit in this court. Id. at ¶1 (citing Case No. 24-cv-469). He says that four days later he received notice of receipt of the lawsuit and a form asking whether he consented to a magistrate judge deciding the case. Id. at ¶2. The plaintiff

alleges that he did not receive any other mail from the court until he received a notice advising him that he had missed his deadline to pay the $18.63 initial partial filing fee and that the court was dismissing the case without prejudice. Id. at ¶¶3–4. He says the dismissal order told him that on April 23, 2024, the court had sent him notice to pay the $18.63 fee; the plaintiff alleges that he never received that notice. Id. at ¶4. The dismissal order told the plaintiff that he still would have to pay the full $350 filing fee. Id. at ¶5.

The plaintiff alleges that after he received this dismissal order, he spoke with Unit Manager Derus (not a defendant) about the policy of logging legal mail because he had not received the April 23, 2024 notice. Id. at ¶6. Derus told the plaintiff that Derus did not know about legal mail and advised the plaintiff to write to the mailroom officer. Id. at ¶7. The plaintiff wrote to Peterson and Jensen; Peterson responded and told him to send a request to Officer Zinn. Id. at ¶9. The plaintiff did so, and Zinn responded that legal mail is not logged. Id. at ¶10. Zinn "apologized for not being able to help further with the issue over the handling of the Plaintiff's legal mail." Id. The plaintiff says that Dunahay is Peterson's supervisor, but he does not say whether he contacted Dunahay. Id. at ¶15.

The plaintiff alleges that on June 19, 2024, he spoke to Derus about his missing legal mail. Id. at ¶11. The plaintiff noted that other incarcerated persons shared his last name. Id. He said that he had spoken to one other Burnette, who did not have his mail, and Derus determined that a third Burnette was on Oxbow Unit. Id. Derus called the unit sergeant on Oxbow to

4

Case 2:24-cv-00887-PP     Filed 10/22/24     Page 4 of 15     Document 11

ask if the other Burnette had received the plaintiff's legal mail in April 2024. Id. at ¶12. This other Burnette stated that he *had* received legal mail that was not his, and that he gave it to Unit Manager Martinson. Id. Derus called Martinson, who stated that he destroyed the legal mail after he received it from the other Burnette. Id. at ¶13. The plaintiff says that Jackson staff did not file an incident report about the destroyed legal mail or "attempt to get the legal mail to its rightful owner." Id. at ¶14. The plaintiff refiled his dismissed civil lawsuit in this court "and will be forced to pay the $350.00 filing fee or partial payment." Id. at ¶16. He says he filed an institutional complaint about the incident, but he does not say what the result was. Id. at ¶17.

The plaintiff says he has experienced past issues with "Mailroom Staff concerning the delivery and handling of his legal mail." Id. at ¶18. He says that on February 8, 2023, he filed an institutional complaint about a delay in receiving legal mail. Id. at ¶19. He says this complaint "was dismissed, because the Plaintiff did not suffer actual injury," and he did not file a civil lawsuit. Id. On February 17 and March 21, 2023, he filed institutional complaints about legal mail that was opened outside his presence. Id. at ¶¶20–21. Staff affirmed these complaints and assured the plaintiff "that changes would be made to the procedures and that the staff would be trained on how legal mail should be properly handled." Id. The plaintiff again "suffered no actual injury" and did not file a civil suit regarding either of these incidents. Id.

The plaintiff asserts violations of his rights under the First, Fourteenth and Fifth Amendments. Id. at ¶¶33, 35, 37. He claims that all the defendants

5

violated his rights to access to the courts and due process of law, which led to dismissal of his previous lawsuit and cost him payment of the additional $350 filing fee. Id. He also says the defendants' actions caused him emotional distress. Id. at ¶39. He seeks $710 in actual damages and unspecified punitive damages. Id.

    C.    <u>Analysis</u>

The plaintiff claims that prison officials destroyed his legal mail and cost him a viable lawsuit and $350 in fees for refiling his dismissed lawsuit.

Mail from the Clerk of Court or from this court is *not* considered legal mail for purposes of a First Amendment challenge. See <u>Mays v. Cooper</u>, Case No. 22-CV-1180, 2024 WL 4056657, at *2 n.1 (E.D. Wis. Sept. 5, 2024) (citing <u>Guajardo-Palma v. Martinson</u>, 622 F.3d 801, 806 (7th Cir. 2010); and <u>Martin v. Brewer</u>, 830 F.2d 76, 78 (7th Cir. 1987)). That means the plaintiff's missing notice from this court was *not* legal mail and was not "entitled to greater protections because of the potential for interference with his right of access to the courts." <u>Kaufman v. McCaughtry</u>, 419 F.3d 678, 685–86 (7th Cir. 2005).

Nonetheless, the plaintiff does have a constitutional right of access to the courts. <u>Bounds v. Smith</u>, 430 U.S. 817, 821–22 (1977) (citing *Ex Parte* <u>Hull</u>, 312 U.S. 546 (1941)). To succeed on an access-to-courts claim, the plaintiff must show that "the defendants' conduct prejudice[d] a potentially meritorious challenge to the prisoner's conviction, sentence, or conditions of confinement." <u>Marshall v. Knight</u>, 445 F.3d 965, 968 (7th Cir. 2006). The plaintiff also must show "'some quantum of detriment caused by the challenged conduct of state

officials resulting in the interruption and/or delay of plaintiff's pending or contemplated litigation.'" Gentry v. Duckworth, 65 F.3d 555, 558 (7th Cir. 1995) (quoting Jenkins v. Lane, 977 F.2d 266, 268 (7th Cir. 1992)). This standard requires the plaintiff to show "'actual substantial prejudice to specific litigation.'" Id. at 559. See also Johnson v. Barczak, 338 F.3d 771, 773 (7th Cir. 2003) (quoting Gentry, 65 F.3d at 559).

The plaintiff's allegations sufficiently state that he suffered an injury. He alleges that his previous lawsuit was dismissed without prejudice, and he when refiled the lawsuit he was required to pay another $350 filing fee. But his allegations do not state a federal claim for several reasons. First, the plaintiff does not allege that the destroyed mail *was* his from the previous lawsuit. He speculates that the mail sent to the other Burnette was his, but there is no way to know if it was. It is possible that it was mail for the third Burnette or a different person altogether and that the plaintiff's mail simply was lost in transit.

Second, even assuming the misdelivered mail was the plaintiff's notice from this court about the initial partial filing fee in his previous lawsuit, this single allegation of missing mail, on its own, does not state a First Amendment claim. See Rowe v. Shake, 196 F.3d 778, 782 (7th Cir. 1999); Schroeder v. Drankiewicz, 519 F. App'x 924, 947 (7th Cir. 2013). Although the plaintiff discusses other times when mail was opened outside his presence, those incidents occurred over a year before this one, and the plaintiff does not allege that they were related or part of an ongoing interference with his mail. Nor does

7

Case 2:24-cv-00887-PP    Filed 10/22/24    Page 7 of 15    Document 11

he allege that he suffered any injury from those incidents. The plaintiff later received the court's dismissal order, which confirms that his misdelivered mail was a one-time occurrence. It also means he could have sent a letter or motion to this court explaining the situation and asking to pay the initial partial filing fee and reopen his case instead of refiling it. This court frequently encounters that situation with incarcerated litigants and regularly allows a second chance to litigate a closed case if circumstances outside of the incarcerated plaintiff's control resulted in missed mail or other issues prosecuting his case. This court would have allowed the plaintiff to reopen and proceed in Case No. 24-cv-469 if he had filed a motion asking to do so and had paid the $18.63 initial partial filing fee. The plaintiff does not allege that he ever told this court about the issue with his mail, and the docket from the previous case shows he did not file anything about it.

Third, the plaintiff has not alleged that any defendant acted intentionally or maliciously to misdeliver or destroy his mail and keep him from prosecuting his previous case. He has not alleged that any defendant except Martinson was involved in destroying the mail or knew anything about it until the plaintiff started asking staff about his missing mail. He says Peterson and Jensen helped point him in the right direction by directing him to Officer Zinn, who even apologized for not being more helpful. Those defendants cannot be liable for the actions of another officer. See Burks v. Raemisch, 555 F.3d 592, 596 (7th Cir. 2009) (noting that §1983 makes public employees liable "for their own misdeeds but not for anyone else's").

The complaint alleges nothing against Dunahay except that he is Peterson's supervisor, and it alleges nothing at all against Cooper. Presumably, the plaintiff seeks to hold Dunahay and Cooper responsible because of their supervisory roles. But their supervisory positions alone are not enough to create constitutional liability. The plaintiff must allege how each defendant was *personally* involved in the alleged misconduct. See Iqbal, 556 U.S. at 676; Day v. Subsecretario del Sistema Penitenciario Federal, 838 F. App'x 192, 193 (7th Cir. 2021). In some situations, supervisors may be held liable if they knew about the misconduct and approved or authorized it. See Sanville v. McCaughtry, 266 F.3d 724, 740 (7th Cir. 2001). But nothing in the complaint suggests Dunahay and Cooper were aware of the misdelivered or destroyed mail. Even if they were, the plaintiff has not alleged that Dunahay or Cooper have any direct supervisory authority over Martinson and were aware of or approved his actions.

Finally, even though the court dismissed the plaintiff's previous lawsuit, it did so without prejudice. See Case No. 24-cv-469-pp, Dkt. No. 9. That means the plaintiff could refile that lawsuit—which he did. This court received the plaintiff's refiled lawsuit on June 28, 2024. See Case No. 24-cv-816-pp. The plaintiff never told the court about his missing mail from Case No. 24-cv-469. The court reviewed the complaint and transferred the case to the Central District of California, where the claims occurred and where the defendants are located. Id., Dkt. No. 9. The case is proceeding in that court, and the plaintiff has not alleged that he is being prevented from pursuing it.

All this shows that the plaintiff did not suffer prejudice to his previous lawsuit, which in any event did not challenge his "conviction, sentence, or conditions of confinement." Marshall, 445 F.3d at 968. The only harm he suffered is the additional $350 he paid to proceed in the refiled lawsuit. But as explained above, he did *not* have to pay another $350 filing fee; he could have told this court what had happened in Case No. 24-cv-469 and asked to reopen the case. It was his choice to refile the lawsuit without first seeking reconsideration of the dismissal.

The complaint alleges no basis to hold any defendant liable for the plaintiff's dismissed lawsuit and additional filing fee. He has not alleged that defendants Jensen, Dunahay, Peterson, Zinn or Cooper had anything to do with his lost mail. He actually alleges that Peterson, Jensen and Zinn helped him track it down. Although Martinson destroyed a piece of mail, there is no way to know whether it was the plaintiff's notice to pay the initial partial filing fee in his previous case. The most that can be said is that Martinson may have acted hastily or unnecessarily in destroying the misdelivered mail instead of trying to find its rightful recipient. But there is no constitutional right to accurate or timely delivery of mail; if there was, non-incarcerated persons would file lawsuits about it several times daily. Once his mail was determined to be missing, the plaintiff decided to refile his lawsuit instead of notifying the court about what had happened. No defendant forced him to pursue that option or kept him from pursing others, so they cannot be held responsible for the plaintiff incurring a new $350 fee when he refiled his lawsuit.

At most, the complaint alleges a single incident of unintentionally and mistakenly misdelivered mail. It does not allege that any defendant knew the mail was the plaintiff's and intentionally or maliciously gave it to another incarcerated person in order to disrupt the plaintiff's previous lawsuit. That the plaintiff's lawsuit was aimed at California persons and entities further suggests that Wisconsin officials had no motive not to deliver the mail to the plaintiff. The plaintiff's decision to refile his lawsuit was his own, and the defendants are not responsible for the additional $350 fee that the plaintiff incurred or for punitive damages, for which the complaint alleges no basis. See Smith v. Wade, 461 U.S. 30, 56 (1983) (noting that punitive damages require proof that the defendant was "motivated by evil motive or intent" or "reckless or callous indifference to a plaintiff's constitutional rights").

For the reasons discussed above, the complaint fails to state a claim for relief. Because the complaint does not state a federal claim, the court will not exercise supplemental jurisdiction over any putative claims arising under state law. The court will dismiss any state law claims without prejudice pursuant to 28 U.S.C. §1367(c)(3).

Although district courts generally permit civil plaintiffs at least one opportunity to amend their pleadings, the court need not do so "when 'it is *certain*' that amendment would be futile." See Fields v. Miller, Case No. 21-1419, 2022 WL 1011666, at *3 (7th Cir. Apr. 5, 2022) (citing Runnion *ex rel.* Runnion v. Girl Scouts of Greater Chi. & Nw. Ind., 786 F.3d 510, 519–20 (7th Cir. 2015)). The plaintiff's factual allegations about his lost mail are thorough

and exhaustive. The court finds it certain that allowing him to provide more information about these events would not change the court's conclusion that the issues of which he complains do not state a constitutional claim. The court will not allow the plaintiff to amend his complaint.

For analysis of any of the plaintiff's future filings under 28 U.S.C. §1915(g), this is the third dismissal of one of his cases as frivolous or for failure to state a claim.[1] This means that the plaintiff has incurred a third "strike," which will take effect when the court enters judgment. Coleman v. Tollefson, 135 S. Ct. 1759, 1763–64 (2015).

> Section 1915(g) provides:
>
> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the ground that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. §1915(g). Consequently, the court advises the plaintiff that he is barred from filing any further civil action *in which he represents himself* while he is a prisoner within the meaning of 28 U.S.C. §1915(h) unless he is in imminent danger of serious physical injury. If the plaintiff files any new civil lawsuit without paying the entire $405 civil filing fee, the complaint must contain allegations sufficient to show that, at the time of filing, the plaintiff is

---

[1] See Burnette v. Tegels, *et al.*, Case No. 24-cv-886-pp (dismissed Oct. 18, 2024, for failure to state a claim); Burnette v. Schmaling, *et al.*, Case No. 20-cv-1792-bhl (dismissed Mar. 30, 2021, for failure to state a claim).

in imminent danger of serious physical injury. If the new complaint does not sufficiently allege imminent danger, the court will dismiss it without prejudice. The plaintiff then would have twenty-eight days to file a motion to reopen the case accompanied by the entire civil filing fee.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because the complaint fails to state a claim. The court will enter judgment accordingly.

The court will document that the plaintiff has incurred his third "strike" under 28 U.S.C. §1915(g).

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$339.23** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Jackson Correctional Institution where the plaintiff is confined.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **thirty days** of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. See Fed. R. App. P. 4(a)(5)(A). If the plaintiff appeals, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal. If the plaintiff seeks to proceed on appeal without prepaying the appellate filing fee, he must file a motion in *this court*. See Fed. R. App. P. 24(a)(1). The Court of Appeals may assess the plaintiff another "strike" if it concludes that his appeal has no merit. If the plaintiff accumulates three strikes, he will not be able to file a case in federal court (except a petition for *habeas corpus* relief) without prepaying the full filing fee unless he demonstrates that he is in imminent danger of serious physical injury. Id.

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within **twenty-eight days** of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more

14
Case 2:24-cv-00887-PP    Filed 10/22/24    Page 14 of 15    Document 11

than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 22nd day of October, 2024.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**